UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE GERARD BURGER,

                        Petitioner,                            Case Number 08-10085
                                                           Honorable David M. Lawson

v.

JOHN PRELESNIK,

                        Respondent,

_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

       Michigan prisoner George Gerard Burger challenges his convictions of armed robbery and

fleeing from a police officer through a petition for a writ of habeas corpus filed under 28 U.S.C. §

2254 with the assistance of counsel. The robbery facts were archetypical: a lonely gas station clerk

was confronted late at night by an unshaven man wearing a hat that partially concealed his face, who

brandished a knife and announced, "This is a stick-up," after which the perpetrator took money and

fled the scene in a pickup truck. An Oakland County, Michigan circuit court judge managed to find

something unique in the robber's style and presentation, especially after learning that the petitioner

had robbed a convenience store seven years earlier using the phrase, "This is a stickup." The state

judge admitted the evidence of the earlier robbery, ostensibly to prove the identity of the petitioner

as the perpetrator of the present crime, despite the fact that he could not be credited with having

coined the phrase or otherwise establishing this manner of heist as his brand. The petitioner

contends that evidentiary error violated his constitutional rights by denying him a fair trial because

the jury probably used the earlier robbery to find that he had a propensity to commit robberies,

which led to the guilty verdict in this case. This Court cannot agree. Although the evidence ruling

at the petitioner's trial was obviously flawed, and most evidence codes consider propensity evidence

to prove guilt anathema, there is no constitutional rule that bars the use of other-act evidence for such purpose, and therefore it cannot be said that the state's evidentiary blunder denied the petitioner a fair trial under the Due Process Clause. The petitioner's other claims — insufficient evidence and ineffective assistance of counsel — do not warrant relief, either. Therefore, the Court will deny the petition.

I.

At the petitioner's jury trial, Steven Goble testified that he was working at a Mobil gas station on Highland Road (M-59) and Duck Lake Road in Highland, Michigan in the early morning hours of Easter Sunday, April 20, 2003. At around 4:00 a.m. he was watching television when a man walked in and announced, "This is a stick-up." Goble thought the man was kidding — who wouldn't, given the unoriginal announcement? — but he realized he was being robbed when the man tapped a knife on the counter. Goble described the perpetrator as an unshaven white male wearing a stocking cap pulled down over his eyebrows. The man appeared to be 40-to-50 years old.

Goble was positioned behind the counter on a slight rise, and the man kept his head lowered and never looked directly him. Goble placed the money from the cash register on the counter; the man took it and left the station. Goble immediately called 9-1-1 and exited the station behind the perpetrator, who disappeared from view behind the gas pump. Goble then saw tail lights illuminate on a vehicle parked on Duck Lake Road. From the taillights alone, Goble identified the vehicle as a mid-1980's domestic small-sized pickup truck.

At trial, Goble could not positively identify the knife offered in evidence by the prosecutor, and he acknowledged identifying other individuals as the perpetrator in both photo and corporeal lineups. When asked if the knife "look[ed] like the [one] that you saw that night?" Goble answered,

-2-

"It looks a lot like it. It looked a little bigger, but it looks like it." However, when the prosecutor asked Goble, "I want you to take a look at this man right here [indicating the petitioner]. Does that look like the man who robbed you that night?" Goble responded, "Yes, it does."

But on cross-examination, Goble was asked if he was "sure" that the petitioner was the man who robbed him, and Goble responded, "A hundred percent sure? No, not the way he's dressed and not clean shaven."

Goble conceded that he had previously described the knife as a hunting knife that had a black blade and multiple finger ridges on the handle. He did not mention a serrated edge or black thumb stud on the blade. The knife Goble identified at trial was a lock blade with a silver blade, a partially serrated edge, a black thumb stud on the blade for one-handed opening, and one ridge on the handle. Goble attempted to explain the difference between the description he gave to the police and the actual appearance of the knife as a result of how the perpetrator held the knife in his hand and because it was held in the shadow of the credit card keypad platform. Goble testified that despite these inconsistencies, the knife produced at trial "looks a lot like" the knife used by the perpetrator.

Defense counsel then showed Goble the photograph array used in a pretrial identification procedure. Goble conceded that he identified subject #2 as the perpetrator whereas the petitioner was subject #4 in the array. Goble also testified on cross-examination that he identified a man other than the petitioner at a live lineup identification procedure. Goble explained on re-direct examination that the petitioner was clean-shaven at the live line up, and that after he identified a different man who was not clean-shaven, he told the detective that the petitioner would have been his second choice.

Deputy Steven Dooley testified that he and Deputy Potts were about 200 yards away from the Mobil station performing a building check when he received the dispatch concerning the robbery. He and Potts sprinted back to their patrol vehicles and headed north on Duck Lake Road. They passed the Mobil station within a couple of minutes of receiving the dispatch. Potts continued north on Duck Lake Road, and Dooley turned west onto Wardlow Road, which he described as a common route taken away from Duck Lake Road. There was no traffic at that time of night, and Dooley saw no taillights.

As Dooley approached Milford Road, approximately five minutes after he passed the Mobil station, he saw a full-size pickup truck parked at the On-The-Go convenience store. He stopped for about two to three minutes to investigate and talked with the driver, whom he knew. While he was standing in the parking lot, he saw a Chevy S-10, a smaller pickup truck, driving west on Wardlow — the direction from which Dooley had come — and then turn north onto Milford Road. On cross-examination, Dooley conceded that if the S-10 was being driven by the perpetrator of the robbery and had traveled the shortest route, he should have passed him before reaching the On-The-Go. But Dooley saw no other vehicles until he reached the On-The-Go. Dooley returned to his vehicle and gave pursuit.

Dooley stopped the S-10 on Milford Road and asked the driver to exit the vehicle. The petitioner was driving the vehicle. Dooley asked the petitioner if he could search the truck, but the petitioner refused. Dooley then asked the petitioner if he had been somewhere in the area of Duck Lake Road and M-59. The petitioner said, "I'm outta here," jumped back into his truck, and sped away.

-4-

Dooley pursued the petitioner along several roads. During the pursuit Dooley could see that the petitioner was swerving back and forth and making furtive gestures in the passenger seat. Eventually the petitioner pulled off the road, stopped, and fled on foot into a woods. The petitioner managed to elude capture but was arrested a few days later at an apartment in Farmington, Michigan.

Deputy John Macdonald testified that he responded to the scene where the petitioner fled on foot. He searched the S-10 and discovered the knife that was identified by Goble at trial. He also recovered a black jacket and found what he described as a crack pipe in the inside pocket.

Detective Craig Cooper testified that he conducted the pretrial identification procedures. The petitioner was not in custody when the photographic lineup was conducted. Cooper explained that as a result, he was forced to use an old picture of the petitioner. Cooper claimed that the photograph of the man Goble chose looked more like the petitioner than the old picture of the petitioner did. Cooper also explained that when the petitioner was arrested, he was clean shaven. On cross-examination, Cooper conceded that he did not write in any of his reports that Goble told him that the petitioner would have been his second choice in the live lineup.

Beside the evidence relating to the robbery itself, the prosecution also presented evidence that the petitioner committed an armed robbery of a gas station in 1996. At a pretrial hearing to determine the admissibility of this evidence, the prosecutor argued that although the petitioner's actions in the previous robbery were different from the actions of the robber in the instant case, those differences could be explained by the notion that a criminal will learn from his earlier mistakes that had then led to his apprehension and conviction. The prosecutor also pointed to the fact that in the 1996 case, the petitioner told the victim that this is a "stick up." The prosecutor argued that the

perpetrator used the same term in the instant case instead of other common terms.  Remarkably, the trial judge accepted the prosecution's position that the term "stick up" was a unique term, and she ruled that the similar-acts evidence would be admitted to establish identity: "[T]he thing that I'm really taken by is, this is a stick up. That is so archaic, I think, and it shows a pattern. Those are unusual words to use, to me, in this day and age. . . ."  The court further found, without analysis, that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

As a result of that ruling,  Balani Kandaswamy testified at trial that on December 15, 1996, at about 6:30 a.m. he was working at a Shell gas station at Farmington Road and Eight Mile Road when a white man came into the store while pulling on a ski mask.  The man said that this is a "stick up," and he had one hand in his pocket as though he had a gun. The man then grabbed all of the money in the cash register and  ran out to a car parked near the gas pump.  Kandaswamy testified that he called 9-1-1 and gave a description of that vehicle.

Officer Matthew Parsons of the Farmington Hills Police Department testified that he received a broadcast that the armed robbery had just occurred, which described the escape vehicle as an older, rusty, blue car with a loud muffler.  He observed such a vehicle at the intersection of Grand River and Pearl.  When he ran the plate on that vehicle he discovered that the plate did not belong to it.  The petitioner was the driver.  Parsons testified that upon searching the petitioner he found a ski mask and  $327 in cash in the petitioner's pocket.

The petitioner called one character witness, Raymond Blanchett, in his defense. Following arguments, instructions, and deliberations, the jury found the petitioner guilty of armed robbery, Mich. Comp. Laws 750.529, and third-degree fleeing and eluding, Mich. Comp. Laws 750.479a(3).

The petitioner was sentenced as a fourth-time habitual offender to a prison term of 15-to-40 years for robbery and three-to-10 years for fleeing and eluding.

The petitioner made two arguments on direct appeal to the Michigan Court of Appeals: (1) the admission of evidence of the petitioner's prior armed robbery under Michigan Rule of Evidence 404(b) was error; and (2) he was denied the effective assistance of trial counsel. The Court of Appeals affirmed the petitioner's convictions in an unpublished opinion. *People v. Burger*, No. 251788, 2005 WL 624277 (Mich. Ct. App. Mar. 17, 2005). The petitioner asserted the argument that admission of the prior armed robbery evidence violated his due process right to a fair trial, but the appellate court found that the claim had been abandoned because his appellate counsel had failed to present any legal authority to support that theory.

The petitioner then filed a timely application for leave to appeal in the Michigan Supreme Court and presented the same two issues, plus an argument that his rights under the Confrontation Clause were violated by his pre-trial examination. The petitioner filed a *pro se* application in which he also contended he had been denied the effective assistance of appellate counsel in the court of appeals when his lawyer failed to support a motion to remand with an affidavit in support of his claim of ineffective assistance of trial counsel. The Michigan Supreme Court denied the petitioner's application for leave to appeal. *People v. Burger*, 474 Mich. 971, 707 N.W.2d 194 (2005).

On August 29, 2006, the petitioner filed a motion for relief from judgment in the state trial court under Michigan Court Rules 6.500 *et seq*. The motion raised three claims:

> I. The admission of evidence of other crimes, wrongs or acts pursuant to Michigan Rule of Evidence 404(b) constituted a denial of due process.
>
> II. The petitioner was denied the effective assistance of appellate counsel because counsel failed to properly brief the admission of evidence of other crimes, wrongs or acts as a denial of due process.

III.  The verdict of guilty based upon insufficient evidence constituted a denial of due process.

The trial court denied the motion in an opinion and order dated September 28, 2006.  The trial court recited the trial evidence and found that the petitioner was not entitled to relief under Michigan Court Rule 6.508(D) because he did not demonstrate that "but for the alleged error, [he] would have had a reasonably likely chance of acquittal."  Mich. Ct. R. 6.508(D)(3)(b)(i).  The court found it unnecessary to address the "good cause" component of Michigan Court Rule 6.508(D)(3) for the failure to raise issues on direct appeal.

The petitioner filed a delayed application for leave to appeal that decision in the Michigan Court of Appeals, which was denied "for lack of merit in the grounds presented." *People v. Burger*, No. 275184 (Mich. Ct. App. May 30, 2007).  The petitioner then filed an application for leave to appeal in the Michigan Supreme Court, which denied relief "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Burger*, 480 Mich. 921, 740 N.W.2d 275 (2007).

The petitioner seeks a writ of habeas corpus from this Court on the following grounds:

I. The admission of evidence of other crimes, wrongs or acts pursuant to Michigan Rule of Evidence 404(b) constituted a denial of due process.

II. The petitioner was denied the effective assistance of appellate counsel because counsel failed to brief properly the admission of evidence of other crimes, wrongs or acts as a denial of due process.

III.  The petitioner was denied the effective assistance of trial and appellate counsel because:

A.  Trial counsel allowed the complainant to make an in court identification;

B.  Trial counsel failed to request a specific instruction on identification; and

-8-

      C.  In the Michigan Court of Appeals, appellate counsel failed to file an affidavit in support of the motion to remand for an evidentiary hearing on the issue of the ineffective assistance of trial counsel.

    IV.  The verdict of guilty based upon insufficient evidence constituted a denial of due process.

Ptn. at 2-3.  The respondent filed an answer in opposition.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also*

-9-

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

-10-

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).

In this case, the state appellate courts did not address specifically the petitioner's argument that admission of the other-acts evidence violated the Due Process Clause; instead, that court summarily denied the claim because it found that the petitioner's appellate counsel had abandoned any federal aspect to it by not developing the argument in the appellate brief. Even though there was no reasoned discussion of the argument, a deferential review standard still is required. Last term, the Supreme Court held that "[s]ection 2254(d) applies even where there has been a summary denial [by the state courts]." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1402 (2011). As the Supreme Court views it, "a habeas court must determine what arguments or theories . . . could have

supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Ibid.* (quoting *Richter*, 131 S. Ct. at 786). Moreover, habeas review is "limited to the record that was before the state court." *Id.* at 1398.

### A.

The petitioner's first claim is that he was denied his constitutional right to due process of law when the trial court allowed the introduction of evidence of his previous armed robbery. The respondent argues that the claim must fail because it cannot be supported by clearly established federal law as announced by the Supreme Court.

State evidence law plainly states that proof of other criminal acts cannot be offered against a criminal defendant to show the defendant's bad character or his propensity to commit the charged offense. *See* Mich. R. Evid. 404(b)(1) (stating that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. . . ."). The Michigan Supreme Court once explained:

> The character evidence prohibition is deeply rooted in our jurisprudence. Far from being a mere technicality, the rule reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence. Underlying the rule is the fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged. Evidence of extrinsic bad acts thus carries the risk of prejudice, for it is antithetical to the precept that a defendant starts his life afresh when he stands before a jury.

*People v. Crawford*, 458 Mich. 376, 383-84, 582 N.W.2d 785, 790 (1998) (internal citations and quotation marks omitted). To be admissible, evidence of prior crimes of the defendant must be offered for a non-character purpose that is relevant. *People v. VanderVliet*, 444 Mich. 52, 64, 508 N.W.2d 114, 121 (1993).

-12-

One such purpose may be to prove that the defendant is the perpetrator of the charged offense, based on unique characteristics common to that offense and other crimes the defendant has committed in the past. However, "when similar-acts evidence is offered to prove identity, [Michigan courts have] insist[ed] upon a showing of a high degree of similarity in the manner in which the crime in issue and the other crimes were committed." *People v. Golochowicz*, 413 Mich. 298, 325, 319 N.W.2d 518, 528 (1982); *see also People v. Goddard*, 429 Mich. 505, 532, 418 N.W.2d 881, 893 (1988) (Boyle, J., dissenting) (comparing the more exacting requirements of other-acts evidence offered as proof of identity with more lenient requirements when proof of intent is involved); *cf. People v. Mardlin*, 487 Mich. 609, 622, 790 N.W.2d 607, 615-16 (2010). The Michigan Supreme Court laid down this rule concerning the use of evidence of other crimes committed by an accused as proof of identity:

> We regard the requirement to be a heavy burden upon the prosecution to show that the manner in which the crime charged and the other crimes were committed was marked with special characteristics so uncommon, peculiar and distinctive as to lead compellingly to the conclusion that all were the handiwork of the defendant because all bore his distinctive style or "touch".

*Golochowicz*, 413 Mich. at 325, 319 N.W.2d at 528.

These principles are hardly unique to Michigan jurisprudence. The Sixth Circuit has recognized that other-act evidence as proof of identity is not relevant unless it is "of sufficient distinctive similarity" with the charges in the indictment to "create a pattern or *modus operandi*." *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006); *United States v. Mack*, 258 F.3d 548, 554 (6th Cir. 2001) (stating that "standard conduct, although not particularly unusual by itself, may, in combination, present an unusual and distinctive pattern constituting a 'signature'").

In this case, the trial judge deemed the use of the phrase "This is a stickup" unique because it was "archaic." The court of appeals agreed, finding that "[t]he trial court plausibly viewed the use of this phrase as rather unusual," and when coupled with the fact that both robberies were "committed at a gas station/convenience store in the early morning by a white man whose face was partially covered by a hat, who was alone, and then escaped in a getaway vehicle parked near a gasoline pump," the inference that the petitioner had struck again was irresistible. *People v. Burger*, 2005 WL 624277, at *1.

That reasoning ought to have caused a judicial double-take. As the state courts laid out the facts of the two crimes, there could have been no better description of a generic robbery. The phrase "This is a stickup" in such context is no more unique than a fast-food counter clerk asking, "Do you want fires with that?" The "stickup" line is standard robbery parlance; in fact, a Westlaw search of federal and state court databases reveals the use of the phrase in 1,215 cases. The state court's finding that the phrase "this is a stick up" establishes some sort of signature defies reason. The other features of the crimes — using a hat to cover the face, targeting a gas station or convenience store (the state courts apparently found some measure of equivalency in these retail establishments), using a vehicle to escape — do not distinguish them as "the handiwork of the defendant because all bore his distinctive style or 'touch.'" The finding that evidence of the 1996 robbery was relevant to prove the identity of the robber in the present case is patently incorrect. The only conceivable use which the jury could make of that evidence was to establish the petitioner's character as a robber.

But the error, obvious though it may be, is still an error of state evidence law. It is well-settled that trial court errors in the application of state evidentiary law generally are not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991);

-14-

*Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant federal habeas relief.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir.1994).  "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff,* 518 U.S. 37, 43 (1996)).

As a matter of evidence law, the use of other-acts evidence to prove a character trait consistent with a defendant's propensity to commit a crime is contrary to firmly established principles of Anglo-American jurisprudence.  The ban on such evidence, which presently is found in Federal Rule of Evidence 404(a) and (b) (and in Michigan's counterpart), has a distinguished historical pedigree.  *See, e.g., Harrison's Trial*, 12 How. St. Tr. 834, 864 (Old Bailey 1692) (Holt, C.J.) (excluding propensity evidence in a murder trial, remarking, "Hold, what are you doing now? Are you going to arraign his whole life? Away, away, that ought not to be; that is nothing to the matter"); *Hampden's Trial*, 9 Cob. St. Tr. 1053, 1103 (K.B. 1684) (Withins, J.) (excluding evidence of prior forgeries from the trial of a man accused of forgery, explaining that the evidence would "rak[e] into men's course of life, to pick up evidence that they cannot be prepared to answer to"); *see also Boyd v. United States*, 142 U.S. 450, 458 (1892) (finding that admission of prior crimes committed by defendants so prejudiced their trial as to require reversal); *Rex v. Doaks*, Quincy's Mass. Reports 90 (Mass. Super. Ct. 1763) (excluding evidence of former acts of lasciviousness from the trial of a defendant accused of keeping a bawdy house); *see generally* Louis M. Natali, Jr. & R.

-15-

Stephen Stigall, *"Are You Going to Arraign His Whole Life?": How Sexual Propensity Evidence Violates the Due Process Clause*, 28 Loy. U. Chi. L.J. 1, 12-23 (1996).

However, although the Supreme Court has found "no question that propensity would be an 'improper basis' for conviction," *Old Chief v. United States*, 519 U.S. 172, 182 (1997), it has declined to hold that similar "others-acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States,* 493 U.S. 342, 352-53 (1990) (finding that the presentation of evidence of another robbery for which the defendant had previously been tried and acquitted did not violate fundamental conceptions of justice). Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Id.* at 352. Put more directly, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.2003); *see also* Fed. R. Evid. 413 and 414 (allowing such evidence in federal criminal trials involving sexual misconduct).

And so, although the state courts badly fumbled a basic evidentiary ruling that likely prejudiced the petitioner, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). Therefore, the Court must deny the petitioner relief on this claim.

### B.

The petitioner next argues that he was denied the effective assistance of appellate counsel because his appellate attorney failed to properly brief and argue the claim that the admission of the prior armed robbery constituted a denial of due process of law. The respondent argues that the claim

-16-

should be considered an attempt to excuse procedural default on his constitutional claim, and the petitioner's appellate counsel was not ineffective.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel. *Evitts v. Lucey,* 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Sixth Circuit has held that the determination of whether appellate counsel performed deficiently should be assessed in light of the following eleven factors:

1. Were the omitted issues "significant and obvious"?
2. Was there arguably contrary authority on the omitted issues?
3. Were the omitted issues clearly stronger than those presented?
4. Were the omitted issues objected to at trial?
5. Were the trial court's rulings subject to deference on appeal?
6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7. What was appellate counsel's level of experience and expertise?
8. Did the petitioner and appellate counsel meet and go over possible issues?
9. Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999); *see also Franklin v. Anderson,* 434 F.3d 412, 429 (6th Cir. 2006).

The Supreme Court has made clear that a criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal. *See Jones v. Barnes,* 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry,* 908 F.2d 56, 59 (6th Cir. 1990). "'[W]innowing out weaker arguments on appeal and focusing on' those more

-17-

likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones,* 463 U.S. at 751-52). Appellate counsel thus need not raise every nonfrivolous issue, but he or she must exercise reasonable professional judgment. *Joshua v. DeWitt,* 341 F.3d 430, 441 (6th Cir. 2003) (citing *Jones,* 463 U.S. at 751-53).

A petitioner is prejudiced by appellate counsel's deficient performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal. *Riley v. Jones,* 476 F. Supp. 2d 696, 709 (E.D. Mich. 2007); *see also Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (appellate counsel may prejudice a defendant by omitting a "dead-bang winner," an "issue . . . obvious from the trial record . . . which would have resulted in reversal on appeal").

The petitioner has not shown that failing to "federalize" the state evidentiary claim by characterizing it as a due process violation caused appellate counsel's performance to fall outside the wide range of professionally competent assistance. Appellate counsel presented viable issues on direct appeal, including claims of insufficient evidence, ineffective assistance of trial counsel for not objecting to an in-court identification, and a violation of Michigan's evidentiary rules. Furthermore, appellate counsel was not ineffective by failing to raise that claim because it could not have succeeded, as discussed above. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). The Court will therefore deny the petitioner's requested habeas relief on these grounds.

C.

-18-

The petitioner next argues that he was deprived of the effective assistance of trial counsel. The governing decision, of course, is *Strickland v. Washington,* 466 U.S. 668 (1984), in which the Supreme Court established a two-pronged test for determining if a criminal defendant was deprived of the effective assistance of counsel guaranteed by the Sixth Amendment.  First, the petitioner must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  A habeas petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690.  Second, the petitioner must show that counsel's deficient performance prejudiced him.  Prejudice is established by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* at 687.  He must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

On habeas review, deference to the state courts' conclusions is required: "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance,* 556 U.S. 111, ---, 129 S.Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)).  Additionally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid.* (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

The petitioner asserts that he was deprived of the effective assistance of counsel because his lawyer did not object to the victim making an in-court identification of the petitioner after he had

-19-

failed to identify him in two pretrial identification procedures, and counsel did not request a specific

cautionary jury instruction regarding the in-court identification. The petitioner also argues that his

appellate counsel failed to support his motion to remand with affidavits to support his claims of

ineffective assistance of trial counsel.

> The Michigan Court of Appeals denied the petitioner's claim on the merits:

> To establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient in that counsel made an error so serious that he failed to perform as the "counsel" guaranteed by the Sixth Amendment, and (2) a reasonable probability that, but for counsel's error, there would have been a different result at the proceeding. *People v. Carbin*, 463 Mich. 590, 599-600; 623 NW2d 884 (2001).

> During Goble's direct examination, he replied affirmatively when asked by the prosecutor whether defendant looked like "the man who robbed you that night." Trial counsel did not object to this question or answer. But shortly thereafter, on cross-examination, trial counsel elicited that Goble was not sure that defendant was the person who robbed him. During Goble's cross-examination, counsel also elicited that Goble at both a photographic and a corporeal lineup had identified someone else. Consequently, a strong presumption exists that counsel's performance constituted sound trial strategy. *Id*. at 600. By allowing Goble to testify that defendant looked like the robber, trial counsel was able to highlight the fact that Goble had previously identified others as having committed the robbery. This certainly cast doubt on the credibility or accuracy of Goble's recollection and identification of defendant. Accordingly, we conclude that trial counsel's failure to object to the relevant question or answer was in the realm of reasonable trial strategy and was not deficient performance that constitutes ineffective assistance of counsel. Similarly, trial counsel's failure to request an instruction on identification could reasonably be viewed as sound trial strategy because counsel could reasonably fear that such an instruction might leave the jury with the impression that they should conclude that Goble actually identified defendant as the robber when in fact he did not do so.

> Further, even if trial counsel's performance were deficient in either or both of the ways defendant claims, we would still conclude that defendant has not established an ineffective assistance of counsel claim because there is no reasonable probability that had counsel performed differently in either regard, the jury would have reached a verdict given the strong evidence of guilt discussed above. *Carbin, supra* at 600.

*Burger*, Slip Op. at 3-4.

This decision did not involve an objectively unreasonable application of the *Strickland* standard. First, the petitioner's argument that the failure to identify a defendant in a pretrial procedure disqualifies subsequent in-court identification testimony finds no support in the law. The petitioner does not argue that the pretrial identification procedures were impermissibly suggestive; therefore, his lawyer did not err in failing to object to the in-court identification. *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004). The victim's failure to identify the petitioner during the pretrial procedures bore on the credibility of his in-court identification, not its admissibility. *Id.* at 525 (citing *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987)). Moreover, defense counsel thoroughly challenged the victim's identification of the petitioner as the perpetrator. He brought out all the facts surrounding the victim's failure to identify the petitioner at the two pretrial identification procedures, and on cross-examination he was able to obtain a concession from the victim that he could not be entirely certain that the petitioner was the perpetrator.

The petitioner's claim that Michigan Criminal Jury Instruction 2d 7.8 should have been requested was likewise reasonably rejected by the Michigan Court of Appeals. The jury was instructed that in deciding whether to believe a witness's testimony they should consider such things as "[w]as the witness able to see or hear clearly? How long was the witness watching or listening? Was anything else going on that might have distracted the witness? Did the witness seem to have a good memory?" Michigan Criminal Jury Instruction 2d 7.8 largely applies those general principles to identification testimony by asking the jury to consider such things as "how good a chance the witness had to see the offender at the time, how long the witness was watching, whether the witness had seen or known the offender before, how far away the witness was, whether the area was well-lighted, and the witness's state of mind at that time." Mich. Crim. Jury Inst. 2d 7.8(2). But it

also tells the jury that it "may use the identification testimony alone to convict the defendant, as long as you believe the testimony and you find that it proves beyond a reasonable doubt that the defendant was the person who committed the crime."  Mich. Crim. Jury Inst. 2d 7.8(4).  Had the instruction been requested and read, the jury would have been told that the victim's testimony alone might suffice to justify a guilty verdict. Because the general jury instructions covered the same ground without including that damaging suggestion, the court of appeals's decision that defense counsel did not perform deficiently by not requesting this instruction was not objectively unreasonable.

The petitioner has failed to demonstrate entitlement to habeas relief under § 2254(d) on this claim.  The Court therefore finds that the petitioner's third habeas claim is without merit.

## D.

The petitioner's fourth claim is that the evidence presented at trial was not sufficient to establish his identity as the perpetrator of the armed robbery.  The respondent argues that this claim is procedurally defaulted because it was not presented to the state courts during his direct appeal, and the Michigan Supreme Court subsequently denied post-conviction relief on the claim under Michigan Court Rule 6.508(D).  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir.2003) (citing *Lambrix v. Singletary,* 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix,* 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of the claim.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original). A federal court may not reweigh the evidence or redetermine the credibility of the witnesses. *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992)). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Ibid.* (citing *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000) (superceded by statute on other grounds)). The Court need not be convinced that the petitioner is actually guilty beyond a reasonable doubt. *Walker v. Russell,* 57 F.3d 472, 475 (6th Cir. 1995) (citing *Neal*, 972 F.2d at 677-78).

The sufficiency of evidence "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson,* 443 U.S. at 324 n. 16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell,* 280 F.3d 594, 617 (6th Cir. 2002), requiring the Court to discuss the elements of the crimes charged.

-23-

Armed robbery under Michigan law is a statutory offense. *See* Mich. Comp. Laws § 750.529. The state courts construe this statute to define the elements of armed robbery as "(1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute." *People v. Johnson,* 206 Mich. App. 122, 123, 520 N.W.2d 672, 673 (1994).

The petitioner does not dispute that the armed robbery actually took place. Instead, the petitioner argues that he did not do it and the state did not prove that he did. The petitioner insists that the eyewitness's identification was unreliable and the clothing description given by the complainant did not match clothing worn or possessed by the petitioner at the time he was stopped by the police.

The Court finds that when viewed in the light most favorable to the prosecution, the evidence could convince a rational juror beyond a reasonable doubt that the petitioner was the man who committed the armed robbery. The victim failed to identify the petitioner at two pretrial identification procedures but testified at trial that the petitioner "looked like" the man who robbed him. The evidence suggested that the victim failed to identify the petitioner in the photo array because the photograph of the petitioner used in the array was several years old. The evidence also revealed that the victim's failure to identify the petitioner at the line-up may have been due to him being was clean-shaven and the victim remembered the perpetrator as being unshaven.

The victim identified the knife found in the petitioner's truck as looking "a lot like" the knife used in the robbery. The description of the knife the victim gave to the police and the knife presented at trial differed in several respects. But viewed in the light most favorable to the

-24-

prosecution, the differences in description could have resulted from the manner in which the perpetrator held the knife and the fact that it was held in a shadowed area of the counter.

The victim testified that the perpetrator drove away for the scene in a mid-1980s domestic small-sized pickup truck. The petitioner was driving a vehicle closely matching that description when he was pulled over. The victim testified that he was able to identify the type of vehicle from observing only the taillights, explaining that he was an automotive afficionado and from his work at the gas station had a lot of experience observing various motor vehicles. The petitioner was stopped on a road in the general vicinity of the gas station within minutes of the robbery and at a time of day where very few other vehicles were present. When the officer asked the petitioner if he had been at the intersection where the robbery occurred, the petitioner fled.

Viewed in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of armed robbery beyond a reasonable doubt. The petitioner therefore is not entitled to relief on this claim.

III.

The petitioner has not shown that the state court's adjudication of those claims resulted in a decision that was either contrary to, or an unreasonable application of, any Supreme Court decision or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **DENIED**.

It is further **ORDERED** that the petitioner's motion to expedite the decision in this case [dkt. #11] is **DENIED as moot**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 27, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 27, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL